UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH FRYE,

Plaintiff,

vs.

BENJAMIN F. LAGERSTROM a.k.a. BENJAMIN IRISH and DIANACOLLV, INC.,

Defendants.

Case No. 1:15-cv-5348

COMPLAINT AND JURY DEMAND

# COMPLAINT

Plaintiff, JOSEPH FRYE, by his undersigned attorney, Danny Jiminian, brings this action against Defendants, BENJAMIN F. LAGERSTROM a.k.a. BENJAMIN IRISH and DIANACOLLV INC., alleging copyright infringement and breach of contract, and seeking damages and injunctive relief. Plaintiff alleges as follows:

## INTRODUCTION

1. This is a case of willful copyright infringement and breach of contract by Defendants, Benjamin F. Lagerstrom a.k.a. Benjamin Irish ("Lagerstrom") and his company, Dianacollv Inc. ("Dianacollv") (collectively, "Defendants"). The Defendants infringed the rights in a film, HOMELESS: A LOVE STORY, written and directed by the Plaintiff, Joseph Frye ("Frye" or "Plaintiff"), a writer, producer and director of motion pictures. Furthermore, the Defendants have breached a contract with Plaintiff related to the making of HOMELESS: A LOVE STORY. The acts of the Defendants have, are, and will continue to

infringe and tarnish Frye's copyright in and to the film, HOMELESS: A LOVE STORY. Accordingly, Frye files this action seeking injunctive relief, damages, seizure and impounding, attorney's fees and costs.

## JURISDICTION AND VENUE

2. This is a suit for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (hereinafter, the "Copyright Act"). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Mr. Frye's state law claim of breach of contract pursuant to 28 U.S.C. § 1367(a).

3. This court has personal jurisdiction over Defendants because all Defendants reside within this State and in this District.

4. Venue in this District is proper, pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a), as all Defendants reside within this District and a substantial part of the events giving rise to this action occurred within this District.

## PARTIES

5. The Plaintiff is an individual residing in New York, New York who writes screenplays and produces, directs and edits videos and films.

6. Plaintiff sometimes uses the alias "Little Lion, Tiny Tiger" when he produces and directs videos.

7. Plaintiff is also an associate producer for Interactive Television at Showtime Networks Inc., a CBS Corporation subsidiary ("Showtime").

8. Plaintiff is the copyright registrant for a script and a motion picture, both entitled HOMELESS: A LOVE STORY. *See* Exhibit A, Certificate of Registration.

9. Upon information and belief, the Defendant Lagerstrom maintains a company and transacts substantial business from multiple locations in New York but principally from 755 10th Ave, #8G, New York, NY 10019.

10. Upon information and belief, the Defendant Lagerstrom owns and operates the Defendant Dianacollv, Inc., a New York Corporation, with its principal place of business at 529 W. 29th St., New York, NY 10001.

11. Upon information and belief, Defendants operated or disseminated the infringing videos on YouTube under the aliases "Jerry Seinfeld" and "Domingo Saint Hilaire." *See* *https://www.youtube.com/channel/UCBWg6Sq_odScZX3b8VyAUmg* and *https://www.youtube.com/channel/UCJ94hJsjbnsUNAJf32r7nDQ* (last accessed on July 9, 2015).

12. Upon information and belief, Defendants operated on Vimeo under the username "Dianacollv Inc."

## STATEMENT OF FACTS

## THE COPYRIGHT

13. Frye is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to the script and the motion picture, both entitled HOMELESS: A LOVE STORY. *See* Ex. A.

14. The script and the motion picture contain wholly original material that is copyrightable subject matter under the laws of the United States.

15. Frye, as the owner, holds the copyright registration on the motion picture, HOMELESS: A LOVE STORY, Copyright Registration Number: PAu 3-760-792. *See* Ex. A.

16. Under the Copyright Act, Frye is the proprietor of all rights, title, and interest in the Copyright, including the right to sue for past infringement.

17. Under the Copyright Act, Frye also possesses the exclusive rights to reproduce, display and publicly perform the copyrighted work, to prepare derivative works based upon the copyrighted work and to distribute the copyrighted work to the public.

18. Defendants do not have a common law copyright of HOMELESS: A LOVE STORY.

19. Defendants have not registered a copyright of HOMELESS: A LOVE STORY with the U.S. Copyright Office.

20. It is a custom and practice of the motion picture industry for any copyright owner who wishes to transfer, lease, sell, rent or license a copyright to another party to do so via an assignment or transfer agreement between the copyright owner and the other party.

21. The contract between Frye and Defendants was not an assignment or transfer agreement. *See* Exhibit B, Crew Agreement.

**THE CONTRACT**

22. On or about September 2014, Frye agreed to produce and direct HOMELESS: A LOVE STORY using some of Defendants' cast, crew and equipment.

23. During negotiations, Frye agreed to give Lagerstrom credits as "Director of Photography" and "Executive Producer" as compensation for his work on the production of HOMELESS: A LOVE STORY.

24. On September 12, 2014, Frye contracted with Defendants so that Defendants would provide Frye with video production services in the form of equipment and select cast and crew. *See* Ex. B, paragraph 2.

25. Pursuant to the contract, "all footage and material being part of [the] agreement is the property of the Producer [Frye] and [Defendants] will not distribute or display such footage in any way other than as an example/demonstration of the [Defendants'] work establishing their efforts of such." *See* Ex. B, paragraph 3.

26. It is a custom or practice of the motion picture industry that an "example/demonstration" is a teaser, trailer or reel sample of work with average running times of about 30 seconds to 2 minutes.

27. The contract further labeled Frye as "Producer" and Lagerstrom as "Crew Chief." *See* Ex.B, signature line.

28. According to the contract, in exchange for equipment and the services of Defendants and any cast and crew Defendants bring into the production, Frye would, primarily:

a. provide the crew with meals during the shoot as compensation,
b. hire his own makeup artist,
c. give the crew a participation credit as compensation,
d. provide a DVD of the completed motion picture, HOMELESS: A LOVE STORY, within 60 days of signing the contract, and

e. pay the "crew" [i.e. the cast] that appear in the short film at the rate of $100 per day if they are leads and $50 per day if they are extras. *See* Ex. B, paragraphs 4-14.

29. It is customary in the motion picture industry that agreements for cast and crew are recognized as "work for hire" contracts wherein the cast and crew are independent contractors and the party hiring the cast and crew becomes the authorized owner of the copyright in the film produced.

30. Frye made the final determination to hire a cast and crew on a "work for hire" basis to shoot HOMELESS: A LOVE STORY as an independent short film.

31. Frye, on his own, hired a make-up artist, a script supervisor and additional actors for the production of HOMELESS: A LOVE STORY.

32. On or about September 2014, Frye informed his employer, Showtime, about the production of HOMELESS: A LOVE STORY to fulfill "a right of first refusal" obligation as Showtime required for Frye to remain employed at Showtime.

33. On or about September 2014, Frye told Defendants about Showtime's right of first refusal requirement.

34. Frye did not write, produce or direct HOMELESS: A LOVE STORY as part of any agreement with Showtime.

35. Upon information and belief, no agreement of any kind was entered into between the Defendants and Showtime for the development and production of HOMELESS: A LOVE STORY.

**COPYRIGHT INFRINGEMENT AND**

**BREACH OF CONTRACT**

36. Frye wrote a 13-page script entitled "HOMELESS: A LOVE STORY" and registered it with the Writers Guild of America on January 29, 2014.

37. It is a custom or practice of the motion picture industry that when determining screen running time, 1 page is equivalent to 1 minute of screen time.

38. On or about July 2014, Frye met with Lagerstrom and told Lagerstrom he was looking for additional crew and cast members to shoot a short film.

39. From July 2014 to September 2014, Frye informed Lagerstrom repeatedly of his goals to produce and direct the short film for festival distribution.

40. On September 12, 2014, Frye and Defendants signed a contract for the hiring of some Dianacollv cast and crewmembers to work on the production of HOMELESS: A LOVE STORY. *See* Ex. B.

41. On or around September 2014, Frye produced, directed and shot the short film HOMELESS: A LOVE STORY.

42. On or around September 2014, after the end of principal shooting, Frye began editing the footage to make a short film with a running time of about 12 – 15 minutes.

43. On or about October 3, 2014, in an email to Lagerstrom, Frye told Lagerstrom that he required the services of Margarita Dominguez, the lead actress in HOMELESS: A LOVE STORY, for additional shots:

   a. "I will be in touch about pickups etc., but think that aiming for the 19th, 26th, 27th would be the best bets." *See* Exhibit C, October 3, 2014 Email from PLAINTIFF.

44. On or about October 3, 2014, in the same email to Lagerstrom, Frye, as requested by Lagerstrom, reiterated the vision for the short film as discussed during earlier negotiations:

a. "The first avenue we are exploring is taking the project through the film fest circuit as a short film. We are actively creating trailers and poster/key art for the project while we are in post production so that if we choose this route we will have things ready to go by the deadline. If we choose this route there would be a premiere at a festival (yet to be determined), we will have a private screening once the short film is ready with cast, crew, etc. Since we will want the "World Premiere" to be at a festival we will not be doing a lot of publicity until that festival arrives. Overall for the circuit I would be taking the film on an east coast tour hitting up a selection of festivals. We can talk more details about this if we choose this route."
b. "The second avenue would focus in on developing the project into a series. As you know there are some companies approaching me about developing the project. They have asked me to hold off promoting the project heavily or releasing footage publicly (including trailers) until there is more of a decision made about everything. I am actively in talks with these companies and potential distribution companies exploring this possibility."
c. "I think thus far we have had a mutually beneficial working relationship and look forward to potentially extending our work on this project or other projects." *See* Ex. C, paragraphs 5-7.

45. On or about October 4, 2014, Lagerstrom responded with an email in which he disregarded Frye's exclusive rights to the copyright material:

a. "In a more thorough response to your email i need to express grave concern over the contradictory nature of multiple points of your expressions regarding the projects future, firstly the statements that you are actively pursuing advertising and promotional artwork and at the same time you are heeding calls to hold off on promotion... ? Plus a deadline for a film festival and no surety of which one or if it will happen...? Please be advised that it is your fiduciary duty to in fact actively promote this project and never hold off on any aspect of its earnings potential. I refuse to accept a statement that qualifies any serious business person asking you to 'hold off' on promoting anything. That hurts every party involved, and is a direct attack against my company and crew as well. Its tortorous interference and its also illegal." *See* Exhibit D, October 3, 2014 Email from DEFENDANT.

46. On or about October 4, 2014, Frye emailed Lagerstrom to remind him that the purpose of the motion picture short was to put it in film festivals and that the process takes time:

a. "The project was written and is being produced as a short film. I am currently going down that route with the project (creating a stand alone short film with accompanying marketing materials). With regards to the other avenue I mentioned in my email yesterday (developing the project more), this is something that is being explored in parallel. This is something you have been aware of from the start of that exploration (which began a few weeks ago) and have discussed with me many times."
b. "As I'm sure you understand film festivals at their core are competitions and something that a filmmaker applies to or works out deals with to have their film screen as a part of. Since the application process has not started for many of next year's festivals (as they are not yet thinking about programming) there is no way to know for sure where the project will be appearing/premiering. To give the short film a little extra publicity I would like it to have a public premiere at one of these festivals."
c. "I assure you that I am in control of all of aspects of this project. I have been in the media industry for a number of years and understand the development and marketing processes that are necessary to make a successful project. The industry is smaller than most like to admit, which is why sometimes it is beneficial to agree to informal requests for a limited amount of time. I want to reassure you that I am seeking the best for this project and that means the best for all involved in the project. We've worked together on this project for many hours and I hope that you understand and trust that I will not settled for less than the best for this project." *See* Exhibit E, October 3, 2014 Email Reply from PLAINTIFF, paragraphs numbered 1, 2 and 4.

47. Upon information and belief, on or about October 2014, Lagerstrom used footage from HOMELESS: A LOVE STORY to edit an unauthorized nearly 6 minute video entitled "Pilot for LL/TT Showtime Networks."

48. In October 2014, Plaintiff was still editing HOMELESS: A LOVE STORY with the purpose of making a 12-15 minute short film.

49. On October 12, 2014, Defendants under the alias, "Jerry Seinfeld," published, performed and displayed on YouTube, without permission, the "Pilot for

LL/TT Showtime Networks" video which is entirely composed of footage from HOMELESS: A LOVE STORY. *See* https://youtu.be/_12z81keV2k (last accessed on July 9, 2015).

50. In the "Pilot for LL/TT Showtime Networks" video, Lagerstrom falsely labeled himself as "Director."

51. The "Pilot for LL/TT Showtime Networks" is not a teaser, trailer or reel sample as the scene in the video represents an important part of the short film and uses a substantial amount of material, about one-half to over one third, of a 12 – 15 minute motion picture.

52. On or about November 14, 2015, Frye discovered the infringing video, and emailed Lagerstrom to remove it, correct the credits and let Frye finish editing the motion picture as originally agreed upon:

a. "The Video at https://www.youtube.com/watch?v=_12z81keV2k (and all places it is embedded) -- I am not now, nor have I ever not approved and supported you and your company's promotion of your participation in the project, HOMELESS: A LOVE STORY. This issues that this video raises are two fold. First the way that you have positioned the video is incorrect and potentially damaging to the project. The edited version of a scene that you are promoting is not a part of the project. It contains footage that your company shot for the project but is not a true representation of the final project. I hope that you want the project to succeed as much as you claim and understand that taking your own creative liberties with the project (which our agreement states remains the property of Little Lion Tiny Tiger) jeopardizes that success. The second issue I raise with the video is the information directly associated with the video is incorrect. An example of this is the video description that states you were the director of the project. You and I discussed roles many times leading up to the production including in front of cast members at a rehearsal. The duties and credits were identified and agreed upon then as You (Benjamin Irish) the Director of Photography and I (Joseph P Frye) as the director of the short film. Both of us would be listed as Executive Producers and the footage would remain the property of Little Lion Tiny Tiger."

b. "Before discussing where the project may go in the future the issue of where the (not yet finished) project is now needs to be address. If there is

no completion of the short film there is no future for the project that is first and foremost a short film." *See* Exhibit F, November 14, 2014 Email from PLAINTIFF, paragraphs numbered 1 and 2.

53. On or about November 14, 2014, Defendants sent Frye and Showtime staff a letter titled "Order" making numerous demands and accusations:

a. "[Y]ou have warranted and represented yourself as a producer and officer for Showtime Networks, with record, and have stated with record to all parties involved in this production that Showtime is interested in developing this into a series. You have also stated that you had a meeting a with Showtime in regards to such, are actively pitching this to them, and further that you met with their parent company, CBS, in regards to this production. You have made numerous statements of record that summarize your claim that these organizations are developing advertising in relation to such, and requested work recently from our talent to perform such photography."
b. "Be advised also that we disagree with some of the claims you made in your communication, firstly that you maintain all the rights to this production. DIANACOLLV Inc. maintains it's rights to the usage of the footage as solidified in the written portions of the agreement and otherwise as is it's right. The agreement also solidifies, and you have solidified such too, our entity as either the production crew for all projects in relation to such, or future work in this and other production based out of our work, as independent contractors." *See* Exhibit G, Order from DEFENDANT, paragraphs 3 and 5.

54. Upon information and belief, on or about November, 2014, Defendants continued sending additional letters and emails to Showtime staff making false accusations about Plaintiff, Showtime, and HOMELESS: A LOVE STORY.

55. Upon information and belief, on or about late November, 2014, Plaintiff sent a cease and desist letter to Defendants requesting they comply with the contract, remove the infringing video from YouTube and resolve the matter amicably.

56. On or around December, 2014, Plaintiff submitted a YouTube copyright infringement notice claim on the infringing video.

57. Upon information and belief, on or around December 19, 2014, Defendants disputed and countered Plaintiff's YouTube infringement claim.

58. On or about December 2014, Defendants stated on the company website page to "Investors and Associates" that "YouTube Legal Services has confirmed the ownership claim made by Dianacollv Inc. in regards to their intellectual property claims." *See* *http://moviemakernyc.simdif.com/one-day-film-school.html* (last accessed on July 9, 2015).

59. On or about December 2014, Defendants claimed to be the "Director" of HOMELESS: A LOVE STORY and falsely claimed that the motion picture is "under assignment" from Plaintiff. *See* *http://moviemakernyc.simdif.com/news-news-news-.html* and *http://moviemakernyc.simdif.com/equipment-rentals.html* (last accessed on July 9, 2015).

60. Upon information and belief, on April 28, 2015, Defendants published, performed and displayed a video on Vimeo entitled "Margarita's Millions" using unauthorized footage from HOMELESS: A LOVE STORY to create a derivative work that acts as a polemic about the entertainment industry and singled out Frye and Showtime for accusations. *See* *https://vimeo.com/126239576* (last accessed on June 29, 2015).

61. Upon information and belief, on May 1, 2015, Defendants published, performed and displayed a video on Vimeo entitled "Jack, La Historia de Jack Veneno" that used unauthorized footage from HOMELESS: A LOVE STORY at the beginning of the video to create a derivative work that contains the same

material and message as "Margarita's Millions." *See* https://vimeo.com/126643421 (last accessed on June 29, 2015).

62. Upon information and belief, on May 4, 2015, Defendants published, performed and displayed a video on YouTube entitled "La Historia de Jack Veneno. Documental de Benjamin Irish con Ric Flair y Relampago Hernandez" that used unauthorized footage from HOMELESS: A LOVE STORY to create a derivative work that contains the same material and message as "Margarita's Millions." *See* https://youtu.be/4UUQCei81Ns (last accessed on July 9, 2015).

63. On June 22, 2015, Plaintiff sent a cease and desist demand letter to Defendants regarding the above infringing videos attaching an agreement to settle by July 1, 2015. *See* Exhibit H – Cease and Desist Letter to Defendants with Response.

64. On June 22, 2015, Lagerstrom responded to the cease and desist demand letter with the following: "Your client is going to jail.... give me a break." *See* Ex. H.

65. On June 22, 2015, Plaintiff submitted copyright infringement notice claims to Vimeo for the infringing videos "Jack, La Historia de Jack Veneno" and "Margarita's Millions."

66. On or about June 23, 2015, Vimeo took the infringing Vimeo videos down.

67. On June 22, 2015, Plaintiff submitted copyright infringement notice claims to YouTube for the infringing videos "Pilot for LL/TT Showtime Networks" and "La Historia de Jack Veneno. Documental de Benjamin Irish con Ric Flair y Relampago Hernandez."

68. Upon information and belief, on June 28, 2015, Defendants published, performed and displayed a new video on YouTube entitled "Margarita's

Millions Teaser" that once again used unauthorized footage from "HOMELESS: A LOVE STORY" to create another polemic about the entertainment industry and single out Frye and Showtime with accusations. *See* https://www.youtube.com/watch?v=9PRVHQDRvnA (last accessed on July 9, 2015).

69. On June 29, 2015, Defendants disputed and countered Plaintiff's Vimeo infringement claim stating that the videos are "fully registered with the United States Library of Congress." *See* Exhibit I, DEFENDANT Counterclaim Letter, paragraph 3.

70. On July 1, 2015, due to a lack of response from YouTube Legal Services regarding the initial copyright infringement claims and because of the newly published infringing video, Plaintiff submitted new copyright infringement notice claims on YouTube for the infringing videos "Pilot for LL/TT Showtime Networks," "La Historia de Jack Veneno. Documental de Benjamin Irish con Ric Flair y Relampago Hernandez" and "Margarita's Millions Teaser."

71. Although duly and repeatedly demanded, Defendants refuse to take the infringing videos down.

72. Upon information and belief, Defendants have made other unauthorized uses of the HOMELESS: A LOVE STORY video and have failed to account to Frye for such usage.

73. As of July 9, 2015, YouTube has not taken the above infringing YouTube videos down.

**AS AND FOR A FIRST CAUSE OF ACTION:**

## COPYRIGHT INFRINGEMENT

74. Frye repeats and realleges each of the allegations contained in Paragraphs 1 through 73 as if fully set forth herein.

75. Frye is, and at all relevant times, has been, the sole owner and proprietor of all rights, title and interest in and to the copyright of the motion picture HOMELESS: A LOVE STORY registered with the United States Copyright Office pursuant to 17 U.S.C.A. 411(a) and infringed by all Defendants. *See* Ex. A.

76. Among the exclusive rights granted to Frye under the Copyright Act are the exclusive rights to reproduce, display and publicly perform the motion picture, create derivative works from the motion picture and distribute the motion picture to the public.

77. All of the videos discussed above ("Pilot for LL/TT Showtime Networks"; "Margarita's Millions"; "La Historia de Jack Veneno. Documental de Benjamin Irish con Ric Flair y Relampago Hernandez"; "Jack, La Historia de Jack Veneno"; and "Margarita's Millions Teaser") contain material wholly original with Frye and are copyrightable subject matter under the laws of the United States.

78. Defendants infringed Frye's copyright, in violation of the Copyright Act, 17 U.S.C.A. § 101 et seq., by knowingly and willfully publishing, displaying, performing and creating derivative works of the HOMELESS: A LOVE STORY footage without the consent or authorization of the Frye.

79. In doing so, Defendants have violated Frye's exclusive rights of reproduction, display, performance, creation of derivative works and distribution.

80. Each Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Frye.

81. As a result of each Defendant's infringement of Frye's exclusive rights under copyright, Frye is entitled to actual and/or statutory damages pursuant to 17 U.S.C. § 504 and to his attorney's fees and costs pursuant to 17 U.S.C. § 505.

82. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Frye great and irreparable injury.

83. Pursuant to 17 U.S.C. §§ 502 and 503, Frye is entitled to injunctive relief prohibiting each Defendant from further infringing Frye's copyright and ordering that each Defendant destroy all copies and footage of the copyrighted motion picture made in violation of Frye's exclusive rights to the copyright.

**AS AND FOR A SECOND CAUSE OF ACTION:**

**BREACH OF CONTRACT**

84. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 83 as if fully set forth here.

85. Plaintiff entered into a contract for services and for the production of a short film with Defendants.

86. Plaintiff fully performed under the contract.

87. At the time of Defendants' breach of contract, Plaintiff had not completed the short film to be able to provide Defendants with a DVD copy of HOMELESS: A LOVE STORY.

88. The contract specifically provided that "*all footage and material being part of [the] agreement is the property of the Producer [the Plaintiff]* and will not distribute or display such footage in any way other than as an example/demonstration of the [Defendants'] work establishing their efforts of such." (emphasis supplied) *See* Ex. B, paragraph 3.

89. Defendants breached the agreement by using the HOMELESS: A LOVE STORY footage in an unauthorized manner contrary to the express agreement of the parties.

90. Defendants further breached the agreement by usurping Plaintiff's credit as "Director" contrary to the express agreement of the parties.

91. Although duly demanded, Defendants failed to comply with Plaintiff's repeated requests that Defendants cease and desist the unauthorized use of the HOMELESS: A LOVE STORY footage.

92. Although duly demanded, Defendants failed to comply with Plaintiff's repeated requests that Defendants recognize Plaintiff as the "Director" of HOMELESS: A LOVE STORY.

93. As a result of the foregoing, Defendants have breached the contract and Plaintiff has been damaged in an amount to be proven at trial.

**AS AND FOR A THIRD CAUSE OF ACTION:**

**INJUNCTION**

94. Frye repeats and realleges each of the allegations contained in Paragraphs 1 through 93 as if fully set forth here.

95. As a result of the aforementioned facts, Frey has been damaged and continues to suffer irreparable harm to his work for which monetary damages may be insufficient.

96. Wherefore, Frye prays for an injunction pursuant to 17 U.S.C.A. §502 to prevent and restrain infringement by Ordering Defendants not to publish, display, perform, distribute, create derivative works of or in any way use or disseminate the copyrighted materials belonging to Frye.

**AS AND FOR A FOURTH CAUSE OF ACTION:**

**STATUTORY DAMAGES**

97. Frye repeats and realleges each of the allegations contained in Paragraphs 1 through 96 as if fully set forth here.

98. As a result of Defendants willful and knowing conduct, Defendants infringed the copyrighted works of Frye.

99. Wherefore, Frye demands that an Order be entered pursuant to 17 U.S.C.A. §504 awarding enhanced statutory damages for each infringement Plaintiff's copyrighted works alleged herein.

**AS AND FOR A FIFTH CAUSE OF ACTION:**

**FOR SEIZURE AND IMPOUNDING**

100. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 99 as if fully set forth here.

101. Plaintiff prays for an Order pursuant to 17 U.S.C.A. §503 for the impounding of all materials used in violation of Plaintiff copyright owner's exclusive rights.

**PRAYER FOR RELIEF**

WHEREFORE Frye respectfully prays for judgment against each Defendant and relief and requests:

(1) That a judgment be entered against Defendants in favor of Frye for such damages as Frye has sustained in consequence of Defendants' infringement of said copyright in an amount to be proven at trial.

(2) That a judgment be entered against Defendants in favor of Frye for such damages as Frye has sustained as a consequence of Defendants' breach of contract in an amount to be determined at trial.

(3) That an order be entered compelling Defendants to account for all gains, profits and advantages derived by each Defendant by its infringement of Frye's copyrights or such damages as to the court shall appear proper within the provisions of the copyright statutes.

(4) That an injunctive relief be granted preventing and restraining infringement of Frye's copyright by Ordering Defendants not to publish, display, perform, create derivative work from, or in any way use or disseminate the copyrighted materials belonging to Frye.

(5) That an Order be entered pursuant to 17 U.S.C.A. §503 for the impounding of all materials used in the violation of Frye, copyright owner's exclusive rights.

(6) That judgment be entered against Defendants in favor of Frye for such damages, costs, and expenses as Frye has incurred in regard to this lawsuit.

(7) That Frye be awarded the costs of this action and reasonable attorney's fees to be fixed by the court.

(8) That Frye have such other and further relief as is just.

**JURY DEMAND**

That Plaintiff as provided by Rule 38 of the Federal Rules of Civil Procedure requests a trial by jury on all issues so triable in the above captioned matter.

Respectfully submitted,

Dated: July 9, 2015
New York, New York

**JIMINIAN LAW PLLC**

Danny Jiminian (#5085980)
65 Payson Ave. Ste. 3
New York, NY 10034
Tel (917) 388-3574
Fax (646) 607-1354
danny@djimlaw.com
Attorney for Plaintiff
Joseph Frye