UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
JOSEPH FRYE,

                Plaintiff,

     - against -

BENJAMIN F. LAGERSTROM, a.k.a
BENJAMIN IRISH, and DIANACOLLV, INC.,

                Defendants.
---------------------------------------X

**MEMORANDUM AND ORDER**

15 Civ. 5348 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    In this copyright infringement and breach of contract action, plaintiff Joseph Frye alleges that defendants wrongfully incorporated footage from his short film into videos that they published on the Internet. Defendant Benjamin Lagerstrom, proceeding <u>pro se</u>, moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for sanctions against the plaintiff and his attorney under Rule 11. For the following reasons, the motion is denied.

## I. BACKGROUND

**A. Facts**

    Plaintiff's Complaint, ECF No. 1 ("Compl."), alleges the following facts. Plaintiff Joseph Frye writes screenplays and produces, directs, and edits videos and films, sometimes using

the alias "Little Lion, Tiny Tiger." Compl. ¶¶ 5-6. The individual defendant Benjamin F. Lagerstrom (the "defendant") owns and operates the corporate defendant Dianacollv, Inc. ("Dianacollv"), a New York corporation. Id. ¶ 10.

In September of 2014, Frye and Lagerstrom reached an agreement to produce a 13-page script entitled "Homeless: A Love Story," which Frye had written and registered with the Writers Guild of America, into a short film of the same name. Id. ¶¶ 22, 36, 40. On September 12, 2014, the parties executed a "Crew Agreement" under which Dianacollv would provide video production services in the form of equipment, cast, and crew. Id. ¶ 24, 40; see id. Ex. B ("Crew Agreement").[1] In exchange, plaintiff would provide, inter alia, meals, a makeup artist, and participation credit to the crew, and provide a DVD of the completed motion picture within 60 days. Crew Agreement at 1. The production work was to be done "on speculation," meaning that defendants would not be paid but were working "under the idea that future paid work will result from the help in promotion of the project that comes with sample/demonstration production, otherwise known as a 'pilot[.]'" Id. The Crew Agreement further provided that "all footage and material being part of this agreement is the property of the Producer" and that

---

[1]    Although the Complaint alleges the Crew Agreement was executed on September 12, 2014, the signatures appear to be dated September 18.   Crew Agreement at 2.  This discrepancy is immaterial.

Dianacollv "will not distribute or display such footage in any way other than as an example/demonstration of the company's work." Id. Plaintiff signed the agreement as the "Producer,"[2] and Lagerstrom signed it as the "Crew Chief." Compl. ¶ 27; Crew Agreement at 2. During negotiations, plaintiff also agreed to give Lagerstrom credits as "Director of Photography" and "Executive Producer" of the film. Compl. ¶ 23.

Principal shooting of "Homeless" commenced and was completed in September of 2014. Id. ¶¶ 41–42. In October of 2014, as Frye was editing the footage to produce a 12–15 minute short film, the relationship between Frye and Lagerstrom deteriorated after the two disagreed about how to best promote the completed film. See id. ¶¶ 42–46.

On October 12, 2014, defendant Lagerstrom, under the alias "Jerry Seinfeld," published a video entitled "Pilot for LL/TT Showtime Networks" on the website YouTube. Id. ¶ 49. The approximately six minute video was composed entirely of footage from the "Homeless" shoot, including an "important part" of the completed film that Lagerstrom had edited differently. Id. ¶¶ 49, 51, 52. In this video, Lagerstrom labeled himself as "Director." Id. ¶ 50. Plaintiff discovered the video and, by email dated November 14, 2015, insisted Lagerstrom remove it.

---

[2]     Elsewhere, the Crew Agreement identifies the "Producer" as "Little Lion-Tiny Tiger." Crew Agreement at 1.

Id. ¶ 52.  Lagerstrom refused, responding with a letter styled "Order" to plaintiff and staff at Showtime Networks Inc., accusing plaintiff of falsely representing that Showtime was interested in the "Homeless" project,[3] accusing plaintiff of certain "criminal activity," and asserting defendants' right to use the footage.  Id. ¶ 53; see id. Ex. G.  Defendant sent additional letters and emails to Showtime staff leveling similar accusations.  Id. ¶ 54.

Meanwhile, in December of 2014, having completed his editing of "Homeless," plaintiff applied for copyright registration.  He received certificates of registration for the text of "Homeless" (effective December 26, 2014) and for the motion picture (effective January 20, 2015).  Id. ¶ 15; see id. Ex. A.

Between April and June of 2015, defendant published three additional videos on the websites Vimeo and YouTube.  Id. ¶¶ 60-62.  These videos -- entitled "Margarita's Millions," "Jack, La Historia de Jack Veneno," and "La Historia de Jack Veneno. Documental de Benjamin Irish con Ric Flair y Relampago Hernandez" -- each incorporated footage from "Homeless" to

---

[3]      Plaintiff asserts that, at the time, he was employed by Showtime Networks as an associate producer for Interactive Television.  Compl. ¶ 7. In September of 2014, he informed Showtime about the production of "Homeless" to fulfill a "right of first refusal" obligation that was a condition of his employment, and he told defendants about this requirement.  Id. ¶¶ 32-33. However, plaintiff did not write, produce, or direct "Homeless" as part of any agreement with Showtime.  Id. ¶ 34.

create a polemic about the entertainment industry. Id. The videos accused plaintiff of conspiring with Showtime in order to harm Lagerstrom. Id.

On June 22, 2015, plaintiff, through counsel, sent defendant a cease and desist letter. Id. ¶ 63. Defendant responded by writing: "Your client is going to jail.... give me a break." Id. ¶ 64. On June 28, 2015, defendant published a video on YouTube entitled "Margarita's Millions Teaser" that used footage from "Homeless" to create another polemic about the entertainment industry and accuse plaintiff and Showtime of misconduct. Id. ¶ 68. Plaintiff submitted copyright notices to YouTube and Vemeo, id. ¶¶ 65, 67, 70, some of which Lagerstrom opposed, id. ¶ 69. As of the filing of the Complaint, some of the allegedly infringing videos remained available on YouTube. Id. ¶ 73.

**B. Procedural History**

On July 10, 2015, plaintiff filed his Complaint in this Court, alleging (1) copyright infringement and (2) breach of contract.[4] Defendant Lagerstrom, proceeding pro se, filed four separate responses to the complaint: a "memorandum of law in support of motion to dismiss," an "answer, affirmative defenses,

---

[4]     Plaintiff's Complaint also contains "causes of action" for (3) "injunction" under 17 U.S.C. § 502, (4) "statutory damages" under 17 U.S.C. § 504, and (5) "seizure and impounding" under 17 U.S.C. § 503. These claims are not stand-alone causes of action but requests for relief under the Copyright Act. We therefore regard them as part of the copyright infringement claim advanced in Count One.

and counterclaims," a "motion and/or petition for declaratory judgment," and "proposed amended answers, defenses, and counterclaims." Separately, he made requests for sanctions and to submit additional evidence. By letter dated September 24, 2015, we struck defendant's responses to the complaint and granted him leave to file a revised, single document to serve as his operative motion or pleading at this stage of the litigation. ECF No. 43. Defendant's "Operative Motion to Dismiss the Complaint and Request for Sanctions" and associated memorandum, ECF No. 45 ("Mem."), filed October 2, 2015, is that motion, which we address here. Plaintiff responded by memorandum dated November 5, 2015, ECF No. 48 ("Opp'n"), and defendant replied on December 3, 2015, ECF No. 52 ("Reply"). Finally, despite our warnings to Mr. Lagerstrom that he could not represent a corporation in court, the corporate defendant Dianacollv remains unrepresented and has defaulted.[5]  ECF No. 50.


## II. DISCUSSION

### A. Legal Standards

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences

---

[5]    On December 18, 2015, we denied plaintiff's motion for a final default judgment against Dianacollv without prejudice to its renewal, given the pending claims against Mr. Lagerstrom.  ECF No. 60.

in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). However, "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). In order to withstand a challenge under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 510 (2007). In deciding a motion to dismiss, the Court may consider exhibits to the complaint and documents incorporated by reference into the complaint. Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F. Supp. 2d 332, 338 (S.D.N.Y. 2009).

Defendant Lagerstrom is proceeding pro se. "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted; emphasis removed). Yet "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Boddie v. New York State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

**B. Analysis**

   **1. Copyright Infringement**

Copyright owners possess the exclusive rights to reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of their copyrighted works.   17 U.S.C. § 106; see Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010).   To establish a claim of copyright infringement, "'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"   Arista Records, 604 F.3d at 117 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).   The presentation of a certificate of copyright registration provides prima facie evidence of both the validity of the copyright, 17 U.S.C. § 410(c), and the originality of the work, Boisson v. Banian, Ltd, 273 F.3d 262, 268 (2d Cir. 2001). The copying of original elements of the work can be established through either direct or indirect evidence.   Boisson, 273 F.3d at 267.

Here, plaintiff adequately alleges copyright infringement. As exhibits to the Complaint, he submits copyright registration certificates for the text and motion picture of "Homeless," entitling him to a presumption of a valid copyright for an original work.   Compl. Ex. A, at 1-4.   He further alleges that defendant incorporated video shot in connection with the project into five videos that defendant published on the Internet.   He

provides the titles, dates of publication, and Internet addresses of the allegedly infringing videos.

Lagerstrom does not dispute that he created and published the videos, composed at least in part of footage from the filming of "Homeless," obviating any question that original material was actually copied. Instead, he contends that his conduct did not constitute copyright infringement because (1) the Crew Agreement contains a transfer or assignment of the right to use the footage, Reply 3–5;[6] (2) plaintiff's copyrights are "fraudulent" because the work was "plagiarized," Reply 3, 6; and (3) his uses of the footage are protected by the First Amendment, Reply 4, 10, 14.

None of these arguments is advanced with a sufficient factual or legal basis to be plausible. Even if they were, such affirmative defenses would rely on facts outside the complaint and therefore would not be appropriate to address in this context. See Capitol Records, Inc. v. MP3tunes, LLC, No. 07 Civ. 9931(WHP), 2009 WL 3364036, at *3 (S.D.N.Y. Oct. 16, 2009) ("While a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative

---

[6]    As noted, the Crew Agreement states just the opposite, that "all footage and material being part of this agreement is the property of the Producer" and that defendants "will not distribute or display such footage in any way other than as an example/demonstration" of their work.   Crew Agreement at 1.   We take defendant's argument to be that his videos are merely "demonstrations" of his work.   Plaintiff has adequately alleged, however, that given the custom and practice in the motion picture industry, none of defendants' videos is correctly viewed as an "example/demonstration" in the sense of a "teaser, trailer or reel sample."   Compl. ¶¶ 26, 51.

defense if the defense appears on the face of the complaint, the complaint itself must establish the facts necessary to sustain defendant's defense." (internal quotation marks, brackets, and citations omitted)); see also Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013) ("Affirmative defenses" that "require[] consideration of facts outside the complaint" are "inappropriate to resolve on a motion to dismiss.").

**2. Breach of Contract**

Plaintiff also adequately alleges breach of contract.  The elements of a cause of action for breach of contract under New York law[7] are: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages suffered as a result of the breach.  First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998).  Here, plaintiff claims the Crew Agreement constituted a binding contract; that plaintiff had fully performed the contract through October of 2014; that defendant breached the contract, both by his unauthorized use of the footage and by falsely claiming that he was the Director of the project; and that plaintiff was damaged because his own plans for promoting and releasing "Homeless" were frustrated.

---

[7]    The parties fail to address what law governs their contract.  Based on the Complaint and the briefing on the motion to dismiss, it appears that Frye and Lagerstrom are residents of New York, that the Crew Agreement was negotiated and executed in New York, and that "Homeless" was filmed in New York.  Therefore, we presume New York law applies.

Generously construed, defendant's papers attack the breach of contract claim by suggesting (1) that the Crew Agreement is invalid because the "fictitious company Little Lion Tiny Tiger" was listed as a party to the agreement, Reply 6; and (2) that he did not profit from his use of the footage, Mem. 7; Reply 4. Even if true, these contentions are not relevant to whether the Complaint states a legal claim upon which relief can be granted. They therefore offer no basis to dismiss the complaint.

### 3. Defendant's Further Arguments

Throughout his Memorandum and Reply, and in his other submissions to the Court, defendant asserts that plaintiff, plaintiff's counsel, Showtime, and others have engaged in a conspiracy against him, defrauded him, and violated his civil rights. These claims are alleged without a basis in fact or law, and moreover are wholly irrelevant to the instant motion to dismiss. We need not address them further.

## C. Sanctions

Having concluded that plaintiff's claims for copyright infringement and breach of contract survive a Rule 12(b)(6) motion to dismiss, we perceive no basis to impose sanctions under Rule 11. Therefore, defendant's request for sanctions is denied.

We appreciate that the relationship between plaintiff and defendant has become acrimonious, and that each feels he was

wronged by the other's conduct relating to the editing, release, and promotion of "Homeless." However, the Court's role is not to repair or resolve this relationship, but to evaluate legal claims properly advanced under the Federal Rules. We urge the parties to thoughtfully consider the merits and value of this action, given their creative and financial interests, and whether a settlement of this case would be more sensible than continued litigation. If the parties are both interested in pursuing the settlement route, the Court would refer this case to a Magistrate Judge to assist in that endeavor.

### III. CONCLUSION

For the foregoing reasons, Defendant Lagerstrom's motion to dismiss and his request for sanctions are denied. The parties should inform the Court within ten days if they wish a referral to a Magistrate Judge for settlement. This Memorandum and Order resolves Docket Number 45.

**SO ORDERED.**

Dated:     New York, New York
           May 23, 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

12

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiff**

Danny Jiminian, Esq.
Jiminian Law PLLC
65 Payson Avenue, Suite 3
New York, NY 10034

**Defendant (*pro se*)**

Benjamin F Lagerstrom
529 W. 29th  Street PHD
New York, NY 10001