UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
JOSEPH FRYE,

               Plaintiff,

        - against -

BENJAMIN F. LAGERSTROM, a/k/a
BENJAMIN IRISH, and DIANACOLLV, INC.,

             Defendants.
------------------------------------------X
BENJAMIN F. LAGERSTROM a/k/a BENJAMIN
IRISH,
           Counterclaimant,

        - against -

JOSEPH P. FRYE,
           Counterclaim Defendant.
------------------------------------------X
BENJAMIN F. LAGERSTROM a/k/a BENJAMIN
IRISH,

           Third-Party Plaintiff,

        - against -

CBS INC./SHOWTIME, LITTLE LION TINY TIGER
PRODUCTIONS, MATTHEW BLANK, ANDREA SIMON,
DAVID NEVINS, TOM CRUTHERS, ELIZABETH
MANSFIELD, JONATHAN BARAM, DAMON WARREN
BARAM, WARREN AND BARAM MANAGEMENT,
MARGARET GERMOSEN A/K/A MARGARITA
DOMINGUEZ, M.G. PUBLIC RELATIONS INC.,
DANNY JIMINIAN, JIMINIAN LAW PLLC, AND
THE DOE PARTIES OF "MICHAEL COLE",
"HEIDI", "JOHNNY DIAZ,"

           Third-Party Defendants.
------------------------------------------X

**MEMORANDUM AND ORDER**

15 Civ. 5348 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Joseph Frye sued defendants Benjamin Lagerstrom and Dianacollv, Inc., for copyright infringement and breach of contract.  Defendant Lagerstrom counterclaimed against plaintiff and initiated a third-party action against a host of individuals and entities.[1]  Before the Court is Frye's motion for summary judgment (ECF No. 173), Frye's motion to dismiss the counterclaims (ECF No. 154), various third-party defendants' motions to dismiss and motion to strike the third-party complaint (ECF Nos. 146, 150), Lagerstrom's motion for summary judgment on the counterclaims and third-party action (ECF No. 208), Lagerstrom's motion for sanctions against Frye's counsel (ECF No. 130), and Frye's counsel's cross-motion for sanctions against Lagerstrom (ECF No. 143).

## I.  BACKGROUND

### A. Facts

The following facts are taken from plaintiff's unrebutted Rule 56.1 Statement (ECF No. 174) and affidavit (ECF No. 175). Plaintiff Joseph Frye is a writer, director, producer, and editor who sometimes used the alias "Little Lion, Tiny Tiger." Frye Aff. ¶ 2.  The individual defendant Benjamin Lagerstrom

---

[1]     While Lagerstrom labels all of his claims as "counterclaims," they are best understood as third-party claims except as against plaintiff Frye.

owned and operated the corporate defendant Dianacollv, Inc. ("Dianacollv"), a New York corporation.  Pl.'s 56.1 Stmt. ¶ 4.

In 2014, Frye and Lagerstrom agreed to produce a short film entitled "Homeless: A Love Story" that was based on a 13-page script written by Frye.  Frye Aff. ¶¶ 3, 6-10.  On September 12, 2014, the parties executed a "Crew Agreement" under which Dianacollv and its "personal representatives" would provide video production services in the form of equipment, cast, and crew.  Frye Aff. ¶ 11; Compl. Ex. B ("Crew Agreement").  In exchange, Frye would provide, <u>inter alia</u>, meals, a makeup artist, and participation credit to the crew, as well as a DVD of the completed motion picture within 60 days.  Crew Agreement at 1.  The production work was to be done "on speculation," meaning that defendants would not be paid but were working "under the idea that future paid work will result from the help in promotion of the project that comes with sample/demonstration production, otherwise known as a 'pilot[.]'"  <u>Id.</u>  The Crew Agreement further provided that "all footage and material being part of this agreement is the property of the Producer" and that Dianacollv "will not distribute or display such footage in any way other than as an example/demonstration of the company's work establishing their efforts of such."  <u>Id.</u>  Frye signed the

agreement as the "Producer,"[2] and Lagerstrom signed it as the "Crew Chief." Crew Agreement at 2. During negotiations, Frye also agreed to give Lagerstrom credits as "Director of Photography" and "Executive Producer" of the film. Frye Aff. ¶ 10.

At the time, Frye was employed by Showtime Networks as an Associate Producer of Interactive Television. Frye Aff. ¶ 5. Frye informed Showtime about the production of "Homeless" to fulfill a right-of-first-refusal obligation that was a condition of his employment. Frye Aff. ¶ 13.

Principal shooting of "Homeless" occurred in late September 2014. Frye Aff. ¶ 14. In October of 2014, as Frye was editing the footage to produce a 12–15 minute short film, the relationship between Frye and Lagerstrom deteriorated after the two disagreed about how to best promote the completed film. Frye Aff. ¶¶ 16-22.

On October 12, 2014, Lagerstrom, under the alias "Jerry Seinfeld," published a video entitled "Pilot for LL/TT Showtime Networks" on the website YouTube. Frye Aff. ¶ 24. The video was composed entirely of footage from the "Homeless" shoot, including an "important scene" of the completed film that Lagerstrom had edited differently. Id. The duration of that

---

[2] Elsewhere, the Crew Agreement identifies the "Producer" as "Little Lion-Tiny Tiger." Crew Agreement at 1.

scene amounted to approximately one-half of the final film's running time.  Id.  Lagerstrom also labeled himself as the "Director" in the video.  Id.  Frye discovered the video and in November 2014 told Lagerstrom, by email and at an in-person meeting, of his disapproval.  Frye Aff. ¶¶ 25-26.  Lagerstrom responded with an "Order" to Frye, as well as multiple emails and mailings to Showtime staff.  Frye Aff. ¶ 27.  Showtime accordingly informed Frye it declined Frye's project because it needed to "address [Lagerstrom's] harassment" first.  Frye Aff. ¶ 28.

Meanwhile, in December 2014, having completed his editing of "Homeless," Frye applied for copyright registration.  He received certificates of registration for the script of "Homeless" (effective December 26, 2014) and for the motion picture (effective January 20, 2015).  Frye Aff. ¶ 33; see Compl. Ex. A.

Between April and June of 2015, defendant published four additional videos on the websites Vimeo and YouTube, each of which incorporated footage from "Homeless."  Frye Aff. ¶ 35; see also Pl.'s 56.1 Stmt. ¶¶ 29-36.  On June 22, 2015, plaintiff, through counsel, sent defendant a cease and desist letter.  Pl.'s 56.1 Stmt. ¶ 32.  Defendant responded by writing: "Your client is going to jail... give me a break."  Pl.'s 56.1 Stmt. ¶ 33.  Plaintiff submitted copyright notices to YouTube and Vimeo,

Pl.'s 56.1 Stmt. ¶¶ 34, 35, 38, some of which Lagerstrom opposed, Pl.'s 56.1 Stmt. ¶ 37.

On July 10, 2015, plaintiff filed the complaint in this Court, alleging (1) copyright infringement and (2) breach of contract.[3]   On October 2, 2015, Lagerstrom filed a motion to dismiss the complaint and a motion for sanctions, which we denied on May 24, 2016.  On September 27, 2016, Lagerstrom filed his second "amended answers, defenses and counterclaims," (ECF No. 104), which operates as the complaint in his third-party action.   These filings are the subject of the various motions addressed herein.

## II. DISCUSSION

### A.    Frye's Motion for Summary Judgment

#### 1.    Legal Standard

Summary judgment is granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is genuine if the evidence is such that a reasonable jury

---

[3]    As we noted in our May 24, 2016 Memorandum and Order, plaintiff's complaint contains "causes of action" for (3) "injunction" under 17 U.S.C. § 502, (4) "statutory damages" under 17 U.S.C. § 504, and (5) "seizure and impounding" under 17 U.S.C. § 503.  These claims are not stand-alone causes of action but requests for relief under the Copyright Act.

could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). "In assessing the record to determine whether there is a genuine issue to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010).

Defendant Lagerstrom is proceeding pro se. "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted and emphasis removed). Yet "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

### 2. Copyright Infringement

Copyright owners possess the exclusive rights to reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of their copyrighted works. 17 U.S.C. § 106; see Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010). To establish a claim of copyright infringement,

"'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  Id. (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).  The presentation of a certificate of copyright registration provides prima facie evidence of both the validity of the copyright, 17 U.S.C. § 410(c), and the originality of the work, Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001).  The copying of original elements of the work can be established through either direct or indirect evidence.  Id. at 267.

Frye has submitted unrebutted evidence of the two requisite elements of a copyright claim: he submitted copyright registration certificates for the text and motion picture of "Homeless," Compl. Ex. A, and an affidavit stating that Lagerstrom incorporated substantial portions of Frye's footage into several videos that Lagerstrom published on the Internet, Frye Aff. ¶¶ 24, 35.

Lagerstrom admits that he created and published videos composed in part of footage from the filming of "Homeless." Lagerstrom Opp'n ¶¶ 27, 38 (ECF No. 160).  However, he contends that the First Amendment permits him to use the footage; that the Crew Agreement was obtained fraudulently; that the Crew Agreement is nullified by the CBS Business Conduct Statement that governs the behavior of employees of Showtime; and that the

8

Crew Agreement permitted him to use the footage.  Lagerstrom Opp'n (ECF No. 188).

These positions are unavailing.  First, Lagerstrom's First Amendment argument suggests, erroneously, that the Copyright Act violates the First Amendment.  See Eldred v. Ashcroft, 537 U.S. 186, 219-21 (2003) (holding that copyright laws do not violate the First Amendment).  To the extent that Lagerstrom relies on fair use, he has not established that defense, as there is no showing that the amount of the work he used in relation to the copyrighted work as a whole was justifiable or that his actions had little impact on the potential value of Frye's works. Second, reading Lagerstrom's submission generously, Lagerstrom appears to suggest that the Crew Agreement was procured under false pretenses because Frye, CBS/Showtime, and an actress appearing in the film were part of a conspiracy to use the film to pursue the actress's rape charges against Lagerstrom.  There is no support for this fanciful notion.  Third, the Business Conduct Statement is not relevant to the underlying conduct; the portions of the Business Conduct Statement to which Lagerstrom cites pertain to rules aimed at, e.g., preventing violations of the Foreign Corrupt Practices Act.  Finally, the Crew Agreement permitted Lagerstrom to use the footage only "as an example/demonstration" of Dianacollv's work, Crew Agreement at 1.  Frye's interpretation of this clause, Pl.'s Mem. of Law at

13 (ECF No. 176), comports with Lagerstrom's: Lagerstrom admits that this "license" was "issued to the defendant so he could *profit* from that use, by obtaining work based on his abilities displayed thereby." Lagerstrom Opp'n ¶ 37. It follows that the clause did not permit Lagerstrom to co-opt the footage for his own purposes, which Lagerstrom admits that he did. See Lagerstrom Opp'n ¶ 27 ("My use of the footage here was in-reverse *beneficial* to the public, because the counter-defendants had engaged in acts using the footage to put the public at risk and hurt others. The airing of facts that warned the public of this danger holds legitimate redeeming social value."); id. ¶ 38 ("Defendant presented footage as part of a discussion with the public that absolutely met the public interest of protecting the People against criminal activity . . . ."). Such purposes were not provided for under the Crew Agreement.

Because there exists no issue of material fact on the copyright infringement claim, summary judgment is granted to Frye.

### 3.    Breach of Contract

The elements of a cause of action for breach of contract under New York law are: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages suffered as a result of the breach. First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162,

10

168 (2d Cir. 1998).   Frye claims that the Crew Agreement constituted a binding contract; that he had fully performed the contract through October 2014; that Lagerstrom breached the contract, both by his unauthorized use of the footage and by falsely claiming that he was the Director of the project; and that plaintiff was damaged because his own plans for promoting and releasing "Homeless" were frustrated.

Lagerstrom does not contest any of these allegations. Rather, Lagerstrom admits that he used the footage but argues that his use was justifiable.  As described *supra*, it was not. Accordingly, summary judgment is granted to Frye as to his claim of breach of contract.

## B.    Lagerstrom's Counterclaims and Third-Party Claims

Frye, Damon Baram, CBS Corporation, Showtime Networks Inc., Thomas Cruthers, David Nevins, Andrea Simon, and Matthew Blank move to dismiss Lagerstrom's counterclaims and third-party claims.  Lagerstrom cross-moves for summary judgment.  Because Lagerstrom does not state a plausible claim to relief, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 510 (2007), the motions to dismiss are granted and Lagerstrom's motion for summary judgment is denied.

Lagerstrom essentially sues for $104 million under 18 U.S.C. § 241 for various wrongs committed against him.[4]  But as Frye and the third-party defendants point out, 18 U.S.C. § 241 is a criminal statute for which there exists no private right of action.  See, e.g., Storm-Eggink v. Gottfried, 409 F. App'x 426, 427 (2d Cir. 2011) (no private right of action exists under 18 U.S.C. § 241); Ippolito v. Meisel, 958 F. Supp. 155, 161 (S.D.N.Y. 1997) (same).  Additionally, to the extent that Lagerstrom bases a claim on the United States Constitution, it fails because Frye and the third-party defendants are not state actors.  See Bletas v. Deluca, No. 11 Civ. 1777 (NRB), 2011 WL 13130879, at *7 (S.D.N.Y. Nov. 15, 2011).[5]  Accordingly, Frye and the third-party defendants' motions to dismiss are granted, and Lagerstrom's motion for summary judgment is denied.

CBS Corporation, Showtime Networks Inc., Thomas Cruthers, David Nevins, Andrea Simon, and Matthew Blank also move to strike Lagerstrom's third-party claims under Federal Rule of Civil Procedure 12(f), which provides, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The motion is

---

[4]    Lagerstrom makes periodic reference to 18 U.S.C. § 246, which appears to be a typographical error when reviewed with the substance of Lagerstrom's claims.  Even if he were asserting claims under 18 U.S.C. § 246, the analysis would not change.

[5]    In particular, Lagerstrom asserts wrongs related to several criminal prosecutions against him in state court, but he has not plausibly alleged any connection between those prosecutions and Frye or the third-party defendants.

12

well-taken.  Although the burden for Rule 12(f) movants is high, "allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones."  G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002).  The third-party claims not only are immaterial to the underlying facts of the case but also accuse the parties of criminal activity.

Striking the allegations is especially warranted as we previously warned Lagerstrom of the impropriety of his claims. In a letter to Lagerstrom dated December 17, 2015, we wrote, "Your . . . submissions to the Court do not bear on the instant motion in this copyright infringement action.  If you believe that you have been the subject of improper criminal charges or attempts at extortion, those should be reported to the appropriate law enforcement officials and pursued in the appropriate forum."  (ECF No. 61.)  In a January 25, 2016 letter, we wrote, "Neither defendant's statements about plaintiff's counsel's alleged family relations, nor his allegations of conspiracies perpetrated against him by various non-parties in Queens, New York, have any place in this federal copyright lawsuit.  Despite that defendant is proceeding pro se, the Court must once again caution him against future submissions of similarly irrelevant material."  (ECF No. 64.)  In a September 7, 2016 Order, we wrote that "defendant has submitted

numerous additional memoranda containing allegations of civil and criminal wrongdoing with no relevance whatsoever to this federal copyright case" and ordered that "defendant shall cease sending materials to the Court that are unrelated to the claims and defenses in this action." (ECF No. 102.) Lagerstrom's subsequent filing of substantially similar allegations was in violation of our directives. Accordingly, we grant the motion to strike the third-party claims.

## C.    Motions for Sanctions

We have denied three motions by Lagerstrom for sanctions against Frye's lawyer. (See ECF Nos. 22, 43, 45, 55, 66.) Lagerstrom's new Rule 11 motion (ECF No. 130) provides no basis to deviate from these prior decisions. There is no evidence before us that Frye's lawyer filed the instant lawsuit for improper reasons; additionally, as detailed in this Memorandum and Order, we find that Frye's allegations were meritorious. Lagerstrom's fourth motion for sanctions is therefore denied.

Frye's lawyer, in his opposition briefing, essentially cross-moves for sanctions based on the impropriety of Lagerstrom's new motion for sanctions. At this juncture we decline to impose sanctions on this pro se defendant. However, we agree that the parties and this Court have devoted undue resources to Lagerstrom's duplicative, immaterial, and vexatious filings, and accordingly we take this opportunity to remind

14

Lagerstrom that "pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Stengel v. Black, No. 10 Civ. 8661 (CM)(HBP), 2011 WL 4975767, at *2 (S.D.N.Y. Oct. 18, 2011) (internal quotation marks and citation omitted). Further frivolous filings from Lagerstrom may warrant the imposition of sanctions.

### III. CONCLUSION

For the foregoing reasons, Frye's motion for summary judgment (ECF No. 173) is granted. Frye's motion to dismiss the counterclaims (ECF No. 154) and third-party defendants' motion to dismiss the third-party claims (ECF Nos. 146, 150) are granted. Third-party defendants' motion to strike the third-party complaint (ECF No. 150) is granted. Lagerstrom's motion for summary judgment on the third-party action (ECF No. 208) is denied. Lagerstrom's motion for sanctions against Frye's counsel (ECF No. 130) is denied. Frye's cross-motion for sanctions against Lagerstrom (ECF No. 143) is denied.

The Clerk of the Court is respectfully instructed to terminate the above-referenced motions and to strike ECF No. 104 from the docket.

15

As the Court has now resolved the issue of liability in favor of plaintiff, Frye is instructed to file a letter to the Court within 14 days of this Memorandum and Order with a proposal on how to move forward on the issue of monetary and/or equitable relief.

We advise Mr. Lagerstrom that upon the termination of this case after resolution of the appropriate imposition of monetary and/or equitable relief, he may appeal this decision to the Second Circuit pursuant to Federal Rule of Appellate Procedure 4.

**SO ORDERED.**


Dated:     New York, New York
           August _31_, 2017


                                  _____
                                  NAOMI REICE BUCHWALD
                                  UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Benjamin F. Lagerstrom
529 W. 29th Street PHD
New York, NY 10001

Benjamin F. Lagerstrom
201 W. 92nd Street Apt. 6B
New York, NY 10025

17