UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
JOSEPH FRYE,

                Plaintiff,

    - against -                 **MEMORANDUM AND ORDER**

BENJAMIN F. LAGERSTROM, a.k.a        15 Civ. 5348 (NRB)
BENJAMIN IRISH, and DIANACOLLV, INC.,

                Defendants.
------------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On August 31, 2017, this Court granted plaintiff Joseph Frye's motion for summary judgment on his copyright infringement and breach of contract claims against defendants Benjamin Lagerstrom and Dianacollv, Inc. Mem. & Order, Aug. 31, 2017, ECF No. 214. Before the Court is plaintiff's motion for equitable and monetary relief. Mot., Dec. 18, 2017, ECF No. 220. For the following reasons, plaintiff's requests for a permanent injunction, impoundment, statutory damages, attorney's fees, and damages for breach of contract are granted in part.

## I. BACKGROUND

### A. Facts

The facts of this case are described in detail in our previous opinions. See Mem. & Order, ECF No. 214; Frye v. Lagerstrom, No. 15 Civ. 5348 (NRB), 2016 WL 3023324 (S.D.N.Y.

May 24, 2016). We assume the reader's familiarity with the facts of the case and only provide the background relevant for deciding the present motion.[1]

In 2014, plaintiff Frye and defendant Lagerstrom reached an agreement to produce a short film entitled "Homeless: A Love Story," which was based on a script written by Frye. Frye Aff. ¶¶ 3, 6-10. On September 12, 2014, the parties executed a "Crew Agreement" under which Dianacollv and its "personal representatives" would provide video production services in the form of equipment, cast, and crew. Frye Aff. ¶ 11; Compl. Ex. B ("Crew Agreement"). In exchange, plaintiff would provide, inter alia, meals, a makeup artist, and participation credit to the crew, and provide a DVD of the completed motion picture within 60 days. Crew Agreement at 1. The production work was to be done "on speculation," meaning that defendants would not be paid but were working "under the idea that future paid work will result from the help in promotion of the project that comes with sample/demonstration production, otherwise known as a 'pilot[.]'" Id. The Crew Agreement further provided that "all footage and material being part of this agreement is the property of the Producer" and that Dianacollv "will not distribute or display such footage in any way other than as an

---

[1] These facts are adopted from plaintiff's unrebutted Rule 56.1 Statement (ECF No. 174) and affidavit (ECF No. 175).

example/demonstration of the company's work." Id. Frye signed the agreement as the "Producer," and Lagerstrom signed it as the "Crew Chief." Id. at 2. During negotiations, Frye also agreed to give Lagerstrom credits as "Director of Photography" and "Executive Producer" of the film. Frye Aff. ¶ 10.

At the time, Frye was employed by Showtime Networks as an Associate Producer of Interactive Television. Id. ¶ 5. Frye informed Showtime about the production of "Homeless" to fulfill a right-of-first-refusal obligation that was a condition of his employment. Id. ¶ 13.

Principal shooting of "Homeless" occurred in late September 2014. Id. ¶ 14. In October of 2014, as Frye was editing the footage to produce a 12-15 minute short film, the relationship between Frye and Lagerstrom deteriorated after the two disagreed about how best to promote the completed film. Id. ¶¶ 16-22.

On October 12, 2014, defendant Lagerstrom, under the alias "Jerry Seinfeld," published a video entitled "Pilot for LL/TT Showtime Networks" on YouTube. Id. ¶ 24. The approximately six minute video was composed entirely of footage from the "Homeless" shoot, including an "important scene" of the completed film that Lagerstrom had edited differently. Id. In this video, Lagerstrom labeled himself as "Director." Id. Plaintiff discovered the video and insisted Lagerstrom remove it. Id. ¶¶ 25-26. Lagerstrom refused, responding with an

3

"Order" to Frye, as well as multiple emails and mailings to Showtime staff. Id. ¶ 27; see Compl. Ex. G. Showtime informed Frye that it was declining his project because it needed to "address [Lagerstrom's] harassment" first. Frye Aff. ¶ 28.

In December 2014, plaintiff applied for copyright registration for "Homeless," receiving certificates of registration for the text of "Homeless" (effective December 26, 2014) and for the motion picture (effective January 20, 2015). Frye Aff. ¶ 33; Compl. Ex. A.

Between April and June of 2015, defendant published four additional videos on Vimeo and YouTube. Frye Aff. ¶ 35; see also Pl.'s 56.1 Stmt. ¶¶ 29-36. On June 22, 2015, plaintiff, through counsel, sent defendant a cease and desist letter. Pl.'s 56.1 Stmt. ¶ 32. Defendant responded by writing: "Your client is going to jail . . . give me a break." Id. ¶ 33. Plaintiff submitted copyright notices to YouTube and Vemeo, id. ¶¶ 34, 35, 38, some of which Lagerstrom opposed, id. ¶ 37.

## B. Procedural History

Frye filed the instant lawsuit on July 10, 2015, alleging copyright infringement and breach of contract claims. On August 31, 2017, we granted Frye's motion for summary judgment on both claims and instructed Frye to file a letter with a proposal on how to move forward on the issue of monetary and/or equitable relief. Mem. & Order, Aug. 31, 2017, ECF No. 214. Frye

subsequently filed a motion requesting a permanent injunction, impoundment, statutory damages for his copyright infringement claim, attorney's fees, and damages for his breach of contract claim. Mot., Dec. 18, 2017, ECF No 220.

## II. DISCUSSION

### A. Permanent Injunction

First, Frye seeks a permanent injunction under 17 U.S.C. § 502 that would prevent Lagerstrom from using any footage from and claiming ownership over "Homeless," and would require him to "update[e] all of his websites with the findings of the Court's recent decisions." Mem. of Law at 7, ECF No. 222.

Given our finding of defendant's liability for plaintiff's breach of copyright claim, 17 U.S.C. § 502 provides that the Court may "grant temporary and final injunctions on such terms as [we] may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff seeking a permanent injunction must satisfy a four-factor test: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

5

permanent injunction." eBay v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

An injunction does not necessarily follow a finding of copyright infringement: the "goals of copyright law are 'not always best served by automatically granting injunctive relief.'" New York Times Co. v. Tasini, 533 U.S. 483, 505 (2001) (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 n.10 (1994)). "[T]he critical question for a district court in deciding whether to issue a permanent injunction . . . is whether there is a reasonable likelihood that the wrong will be repeated." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 504 (2d Cir. 2014) (quoting SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1100 (2d Cir. 1972)). "Courts have consistently found that '[h]arm can be irreparable, and adequate remedies at law lacking, where . . . , absent an injunction, the defendant is likely to continue infringing the copyright.'" HarperCollins Publishers LLC v. Open Road Integrated Media, LLP, 58 F. Supp. 3d 380 (S.D.N.Y. 2014) (quoting Broad. Music, Inc. v. PAMDH Enters., Inc., No. 13 Civ. 2255 (KMW), 2014 WL 2781846, at *4 (S.D.N.Y. June 19, 2014) and collecting cases).

The four eBay factors all support granting an injunction here. First, because lost sales in the copyright context are "difficult if not impossible to measure," courts frequently find that infringement inflicts irreparable harm. Barcroft Media,

6

Ltd. v. Coed Media Grp., LLC, No. 16 Civ. 7634 (JMF), 2017 WL 5032993, at *8 (S.D.N.Y. Nov. 2, 2017) (quoting Broad. Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016)). Second, Lagerstrom continued infringing plaintiff's copyright even after Frye put him on notice of his infringement. See Pl.'s 56.1 Stmt. ¶¶ 32-38. This behavior suggests that Lagerstrom may continue to engage in infringing activities unless enjoined from doing so by the Court, and money damages therefore may be inadequate to account for future harm. See Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015); HarperCollins, 58 F. Supp. 3d at 386. Third, in considering the balance of hardships, "[i]t is axiomatic that an infringer cannot complain about the loss of ability to offer its infringing product." WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 287 (2d Cir. 2012); HarperCollins, 58 F. Supp. 3d at 386. Fourth, and finally, issuing an injunction would be consistent with the public interest because "the public has a compelling interest in protecting copyright owners' marketable rights to their work . . . ." WPIX, 691 F.3d at 287.

Based on our analysis of these factors, the Court orders that Lagerstrom is permanently enjoined from infringing on

Frye's copyrights in "Homeless," including by claiming ownership of "Homeless."[2]

**B. Impoundment**

Frye next seeks the seizure and impoundment of "all Homeless footage, business records, copies of works, masters, tapes, and related materials in Lagerstrom's possession or control." Mem. of Law, ECF No. 222 at 8. Frye seeks this relief pursuant to 17 U.S.C. § 503, which provides: "As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced." 17 U.S.C. § 503(b). The standard for impoundment "mirrors the standard for granting injunctive relief." MPD Accessories B.V. v. Urban Outfitters, No. 12 Civ. 6501 (LTS) (KNF), 2014 WL 2440683, at *10 (S.D.N.Y. May 30, 2014) (quoting Hounddog Prods., L.L.C. v. Empire Film Grp. Inc., 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011)).

---

[2] As noted above, Frye additionally requests that the Court order Lagerstom to update his websites with the findings of the Court's latest decisions. Because an injunction "should be narrowly tailored to fit specific legal violations," Waldman Publ'g Co. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994), we decline to require that Lagerstrom describe the Court's rulings on his websites.

8

On October 13, 2017, Lagerstrom proposed that he would destroy all copies of all "Homeless" footage in his possession by December 1, 2017. Letter Mot. at 5, Oct. 13, 2017, ECF No. 219. The parties therefore appear to be in agreement on the appropriate resolution of this issue. To the extent that Lagerstrom has not already destroyed this footage, or now withholds his consent to do so, Lagerstrom is ordered to forthwith destroy all copies of all "Homeless" footage in his possession or control.

## C. Statutory Damages for Copyright Infringement

Frye next requests $19,734.18 in statutory damages, which he argues is a fair award because it equals "Homeless"'s $3,289.03 budget (specifically, the amount plaintiff invested to produce, direct, and edit "Homeless") multiplied by six known acts of infringement.

The Copyright Act allows for a successful plaintiff "to recover, instead of actual damages and profits, an award of statutory damages." 17 U.S.C. § 504(c)(2). Statutory damages may be awarded in the range of $750 to $30,000, but if the copyright owner proves that the infringement was "committed willfully," the Court may increase the award of damages to $150,000. 17 U.S.C. §§ 504(c)(1)-(2). To establish that the defendant's infringement was willful, the plaintiff must show either that the defendant had "knowledge that its actions

9

constitute an infringement," Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1115 (2d Cir. 1986), or "that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights," Island Software & Comput. Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005).

The Court has "wide discretion . . . in setting the amount of statutory damages." Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 127 (2d Cir. 2014) (quoting Bryant v. Media Right Prods., Inc., 603 F.3d 135, 143 (2d Cir. 2010)); see 17 U.S.C. § 504(c)(1) (statutory damages should be awarded in an amount "as the court considers just"); 17 U.S.C. § 504(c)(2) ("[T]he court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."). We consider the following six factors in determining the quantum of statutory damages: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." Psihoyos, 748 F.3d at 127 (2d Cir. 2014). Although lost revenue is one factor to consider, there does not need to be a direct correlation between statutory damages and actual damages. Id.

As we observed in our August 31, 2017 order granting summary judgment, Lagerstrom admits that he created and published videos composed in part of footage from the filming of "Homeless," and the Crew Agreement clearly provides that he was not entitled to do so. Moreover, Lagerstrom continued to publish infringing videos after Frye sent him cease and desist letters and even after the complaint was filed in this case. It follows that Lagerstrom's infringement was willful.

While a finding of willfulness raises the maximum available statutory damages to $150,000, economic considerations here militate toward a significantly smaller award. Frye concedes that the total budget of the infringed work was only $3,289.03. Although any exact estimation of profits earned by Lagerstrom and revenue lost by Frye would be speculative on this record, it is evident that these economic factors point towards an award of statutory damages towards the lower end of the statutory range without any evidence that would suggest lost revenue or wrongly-obtained profits disproportionate to the film's budget. As to the parties' conduct, Lagerstrom's submission of numerous duplicative, immaterial, and vexatious filings supports an increase in statutory damages, which is mitigated in part by his pro se status.

Considering all relevant factors under § 504(c), the Court determines that an award of $10,000 in statutory damages is appropriate given the facts and circumstances.

**D. Attorney's Fees**

Frye applies for attorney's fees in the amount of $21,450. For the following reasons, we grant this reasonable request.

Under 17 U.S.C. § 505, the Court has the discretion to "award a reasonable attorney's fee to the prevailing party" in a copyright infringement action. The Court's discretion in determining whether to award attorneys' fees is guided by the following nonexclusive factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 108 (2d Cir. 2014) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 & n.19 (1994)). In particular, "objective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted" because "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 121-22 (2d Cir. 2001).

We award attorney's fees here because several of Lagerstrom's positions in defending this copyright infringement claim were objectively unreasonable. In the Court's August 31, 2017 Memorandum and Order granting summary judgment, we found that Lagerstrom had admitted to creating and publishing videos composed in part of infringing footage, and that Lagerstrom's defenses were precluded by well-settled law or agreed-upon facts. ECF No. 214 at 7-10. Further, significant portions of Lagerstrom's submissions were devoted to developing a conspiracy theory involving the plaintiff and third parties' alleged manipulation of New York State's criminal justice system, which we dismissed as a "fanciful notion." Id.

Lagerstrom's pro se status does not change this calculus. Although courts "afford greater leniency" in cases involving pro se litigants, Perry v. Estates of Byrd, No. 13 Civ. 1555 (ALC), 2014 WL 2998542, at *7 (S.D.N.Y. July 3, 2014), several courts have awarded attorneys' fees pursuant to 17 U.S.C. § 505 in cases where pro se parties' positions were objectively unreasonable, see Hudson v. Universal Studios, Inc., 369 F. App'x 291, 292 (2d Cir. 2010); Attia v. Soc'y of N.Y. Hosp., 12 F. App'x 78, 79-80 (2d Cir. 2001); Chivalry Film Prods. v. NBC Universal, Inc., No. 05 Civ. 5627 (GEL), 2007 WL 4190793, at *1-4 (S.D.N.Y. Nov. 27, 2007); Polsby v. St. Martin's Press, No. 97 Civ. 690 (MBM), 2000 WL 98057, at *2-3 (S.D.N.Y. Jan. 18, 2000).

Having determined that this case merits an award of attorney's fees, we must next consider the proper amount of such an award. Frye's initial application requested $21,450 in attorney's fees, but did not contain any contemporaneous records specifying the date, hours expended, or nature of the work done, as is required for an award of fees in this Circuit. See Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 148 (2d Cir. 2014). In response to the Court's request for this information (ECF No. 223), plaintiff's attorney Danny Jiminian provided the Court with records of the dates, tasks, and hours of the legal services performed for this case (ECF No. 224). Jiminian's records indicated that he spent 148.9 hours on this case at a rate of $200 per hour. Id. After discounts totaling $8,330, plaintiff sought $21,450 in attorney's fees. Id.

Jiminian's work on this case, which has been pending for nearly three years, has included drafting and filing a complaint (ECF No. 1), an opposition to Lagerstrom's motion to dismiss (ECF No. 48), a motion for default judgment (ECF No. 54), an opposition to Lagerstrom's motion for sanctions (ECF No. 143), a motion to dismiss Lagerstrom's counterclaims (ECF No. 155), a motion for summary judgment (ECF No. 176), and the motion currently before the Court seeking monetary and equitable relief (ECF No. 222), as well as numerous letters and other correspondence with Lagerstrom and the Court. In addition,

Jiminian was tasked with reviewing and responding to Lagerstrom's frequent lengthy submissions, which often addressed subjects only tangentially relevant to this case. See, e.g., ECF No. 18 (133 pages); ECF No. 51 (65 pages); ECF No. 55 (49 pages); ECF No. 72 (342 pages); ECF No. 130 (50 pages); ECF No. 203 (266 pages); ECF No. 225 (95 pages). We find that the amount of time Jiminian devoted to these tasks, as substantiated in contemporaneous records, was reasonable.

We also find that Jiminian's request for a $200 hourly rate is reasonable for an attorney with his level of experience. According to the records of the New York State Unified Court System, available at iapps.courts.state.ny.us/attorney/ AttorneySearch, Jiminian was admitted to the New York Bar in February 2014, 17 months before this case was filed. See, e.g., Morales v. Kavulich & Assocs., P.C., No. 16 Civ. 2134 (ALC) (JLC), 2017 WL 2712948, at *1 (S.D.N.Y. June 15, 2017) (taking judicial notice of attorneys' bar admission dates as provided in the records of the New York State Unified Court System and collecting cases doing the same).

Courts in this District have found attorneys' fees in the range of $200 per hour to be reasonable for litigators with limited professional experience, even where they had only a minor role in the litigation. See DeCastro v. City of New York, No. 16 Civ. 3850 (RA), 2017 WL 4386372, at *6 (S.D.N.Y. Sept.

30, 2017) (finding rates between $150 to $275 for junior associates at law firms in this District to be reasonable); Pakter v. N.Y.C. Dep't of Educ., No. 08 Civ. 7673 (DAB) (KNF), 2010 WL 5653397, at *3 (S.D.N.Y. Oct. 26, 2010) (finding rates between $200 and $275 for a junior associate in this District to be reasonable). Jiminian's rate of $200 per hour as Frye's lead counsel is therefore reasonable in light of his experience.

Lagerstrom argued in opposition that this fee request was unreasonable because it was disproportionate to the needs of this litigation, exceeded Frye's alleged damages, and because the payments from Frye to Jiminian by credit card were not sufficiently well documented. Letter, June 4, 2018, ECF No. 225. First, as discussed above, we find that Jiminian's total hours were reasonable given the demands of this case, many of which were brought about by Lagerstrom's own conduct. Second, there is no per se proportionality rule that limits available attorney's fees in relation to damages. See Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) ("[I]n litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court. . . . It is therefore difficult to generalize about the appropriate size of the fee in relation to the amount in controversy."); J.S. Nicol, Inc. v. Peking Handicraft, Inc., No. 03 Civ. 1548 (GBD) (AJP), 2008 WL 4613752, at *9 (S.D.N.Y.

16

Oct. 17, 2008) (rejecting proportionality rule in context of attorney's fee request under 28 U.S.C. § 505). Finally, there is no basis in the law for Lagerstrom's insistence that Jiminian's requests for attorney's fees are illegitimate because his client paid him by credit or debit card rather than in cash. The method of payment simply does not factor into this analysis.

### E. Damages for Breach of Contract

Frye requests $1,921.98 in reliance damages for breach of contract, arguing that he is entitled to recover his expenses for meals ($176.41), a make-up artist ($250), lead and supporting cast ($1,310.54), and safety measures ($185.03) to restore him to the position he was in before entering the Crew Agreement with Lagerstrom. Under New York law, "a plaintiff may recover 'damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed.'" St. Lawrence Factory Stores v. Ogdensburg Bridge & Port Auth., 13 N.Y.3d 204, 208 (2009) (quoting Restatement (Second) of Contracts § 349). Lagerstrom does not contest the appropriateness of awarding reliance damages nor the amount of damages for breach of contract sought by Frye. We find that an award of damages equal to plaintiff's $1,921.98 in expenses is appropriate because it serves to

"restore plaintiff to the position in which [he] would have been had [he] not relied on defendant's alleged promise." Clifford R. Gray, Inc. v. LeChase Constr. Servs., 51 A.D.3d 1169, 1170, 857 N.Y.S.2d 347, 349 (3d Dep't 2008).

## F. Counterclaims

In his opposition to Frye's request for relief, Lagerstrom repeated the allegations that formed the basis of the counterclaims that have already been dismissed by this Court. See ECF No. 214 at 11-14. In purported additional support of these dismissed counterclaims, Lagerstrom pointed to the fact that on May 30, 2018 he was acquitted of all charges in a trial against him in Queens Criminal Court.[3] See ECF No. 225 at 13-91 (trial testimony), 93 (verdict sheet), 94-95 (certificate of disposition). None of the new evidence presented by Lagerstrom changes our conclusion that "he has not plausibly alleged any connection between [this prosecution] and Frye . . . ." ECF No. 214 at 12 n.5. The Court rejects Lagerstrom's invitation to revisit our prior decision dismissing his counterclaims.

## III. CONCLUSION

Lagerstrom is permanently enjoined from infringing Frye's copyright in "Homeless." Lagerstrom is ordered to forthwith destroy all copies of all "Homeless" footage in his possession

---

[3] Lagerstrom had been arraigned on charges under N.Y.P.L. 120.00 (third degree assault), N.Y.P.L. 135.05 (unlawful imprisonment), N.Y.P.L. 130.52 (forcible touching), N.Y.P.L. 130.55 (third degree sexual assault), and N.Y.P.L. 240.26 (second degree verbal harassment).

18

or control.  The Court awards $10,000 in statutory damages for copyright infringement under 17 U.S.C. § 504(c), $1,921.98 in damages for breach of contract, and $21,450 in attorney's fees under 17 U.S.C. § 505.  The Clerk of Court is respectfully instructed to terminate the motion pending at ECF No. 220, enter judgment in favor of plaintiff, and close this case.

**SO ORDERED.**

Dated: New York, New York
June 27, 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

**Attorney for Plaintiff**

Danny Jiminian, Esq.
Jiminian Law PLLC


**Defendant (*pro se*)**

Benjamin F Lagerstrom


**Copies of the foregoing Memorandum and Order have been mailed on this date to the following:**

Benjamin F. Lagerstrom
529 W. 29th Street PHD
New York, NY 10001

Benjamin F. Lagerstrom
201 W. 92nd Street Apt. 6B
New York, NY 10025